**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | No. CR08-1203-PHX-DGC |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Brandon Dineshe Begay, ) | |
| Defendants. ) | |

Defendant Brandon Begay asks the Court to dismiss the indictment against him on ten separate grounds related to the application and timing of the Sex Offender Registration and Notification Act. Dkt. #11. The parties have briefed the issues, and the Court held oral argument on February 19, 2009. For the reasons that follow, the motion to dismiss will be denied.

**I.    BACKGROUND.**

Defendant pled guilty to Sexual Abuse of a Minor in violation of 18 U.S.C. § 2243(a). On June 5, 2006, he was sentenced to 24 months in prison with a three-year term of supervised release. *See United States v. Begay*, CR-05-1039-PCT-DGC, Dkt. # 34. Defendant's plea agreement and terms of supervision required Defendant to register with all state and tribal sex offender agencies in any state where he resided, was employed, carried on a vocation, or was a student, as directed by the probation officer. *Id*., Dkt. ##35, 36.

On December 10, 2007, Defendant registered with the State of Arizona, listing his address as 2445 North Oracle Road, Tucson, Arizona, the address of the New Beginnings

residential re-entry center. The indictment in this case alleges that Defendant absconded from New Beginnings on December 24, 2007, and was arrested in Tuba City, Arizona, on January 11, 2008. Tuba City is located on the Navajo reservation. The Government asserts that Defendant's grandmother was interviewed and said the Defendant left New Beginnings on December 24, 2007, and she picked him up at a bus stop in Flagstaff, Arizona, on December 27, 2007. The Government asserts that he resided in Tuba City until the time of his arrest in this case.

On July 27, 2006, the Adam Walsh Child Protection and Safety Act of 2006 was signed into law. Pub. L. No. 109-247 §§ 1-155, 120 Stat. 587, 590-611 (2006). Section 141 of the Act contains the Sex Offender Registration and Notification Act ("SORNA"). SORNA imposes criminal penalties of up to ten years in prison on individuals who are required to register as sex offenders under SORNA, who travel in interstate or foreign commerce or enter or leave or reside in Indian country, and who knowingly fail to register or update a sex offender registration as required by SORNA. 18 U.S.C. § 2250(a)(1)-(3). Criminal liability cannot be imposed if "uncontrollable circumstances prevented the individual from complying" with SORNA's registration requirements. 18 U.S.C. § 2250(b)(1).

SORNA's registration requirements are set forth in 42 U.S.C. § 16913. This provision requires a sex offender to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). SORNA also states that "[a] sex offender shall, not later than 3 business after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in information required for that offender in the sex offender registry." 42 U.S.C. § 16913(c). On February 28, 2007, pursuant to § 16913(d) of SORNA, the Attorney General issued an interim regulation specifying that SORNA registration requirements "apply to *all sex offenders* including sex offenders convicted of the

offense for which registration is required prior to the enactment of [SORNA]." 42 Fed. Reg. 8894, 8897 (Feb. 28, 2007), codified at 28 C.F.R. § 72.3 (emphasis added).

Indian tribes may become a registering jurisdiction under SORNA or may choose to allow another jurisdiction "within which the tribe is located" to fulfill the SORNA registration function. 42 U.S.C. § 16927. A tribe "is not required to duplicate functions under this part which are fully carried out by another jurisdiction or jurisdictions within which the territory of the tribe is located." *Id*. Defendant has provided evidence that the Navajo Nation has adopted a resolution electing to implement SORNA's requirements. The Navajo Nation has created a task force to implement a sex offender registry, but the registry has not yet been created.

The Government argues that Defendant was obligated under SORNA to notify the State of Arizona – because the Navajo Nation does not yet have a registration system – that he had changed his address to the reservation. The indictment charges Defendant with a felony for failing to comply with this requirement.

**II. DEFENDANT'S ARGUMENTS.**

Defendant makes ten arguments concerning his potential liability under SORNA. The Court will address each argument separately.

**A. SORNA has not been implemented by the Navajo Nation.**

Defendant argues that the indictment should be dismissed because SORNA has not yet been implemented by the Navajo Nation. Case law makes clear, however, that SORNA imposes an obligation on Defendant regardless of whether the jurisdiction has complied with SORNA's requirements. *See United States v. Crum*, No. CR08-255RSL, 2008 WL 4542408, *3 (W.D. Wash. 2008) ("Even where states have not adopted the registration requirements, individuals can comply with SORNA by registering under the currently existing system"); *United States v. Gould*, 526 F. Supp. 2d 538, 542 (D. Md. 2007). These cases distinguish between the obligation SORNA places on individual sex offenders to register, and the obligation it places on states and other jurisdictions to maintain a particular kind of registry.

1  The individual offender's obligation exists even if a jurisdiction is not fully SORNA-
2  compliant. As one court has explained:

> While SORNA imposes additional requirements upon states to improve their registry systems, these obligations are separate and distinct from those imposed upon sex offenders. . . . A state's failure to update its registration system to conform with SORNA does not alter a sex offender's independent duty to register all information that is required by then-existing state law. . . . Every district court to confront the issue has held that a defendant could comply with SORNA even when the state in which the defendant was required to register had not yet implemented the federal law.

*United States v. Shenandoah*, 572 F. Supp. 2d 566, 578-79 (M.D. Pa. 2008) (citing cases).

Defendant asserted at oral argument that any reading of SORNA that obligates Defendant, a tribal member living on tribal land, to register with the State of Arizona, would abrogate tribal sovereignty. The Court does not agree. Congress has authority to implement federal criminal statutes of general applicability on tribal lands. *See United States v. Houser*, 130 F.3d 867, 873 & n.4 (9th Cir. 1997). There can be no doubt that Congress intended SORNA to apply to tribal lands. SORNA violations specifically can occur if a defendant enters, leaves, or resides in "Indian country." 18 U.S.C. § 2250(a)(2); *see also* 18 U.S.C. § 1152 ("Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.").

The question, then, is whether Congress intended to impose on Defendant an obligation to register with the State of Arizona when the Navajo Nation has agreed to implement SORNA but does not yet have an operating registry. Defendant argues that SORNA clearly recognizes the right of an Indian tribe to participate in the SORNA registration system, and therefore makes clear that the relevant registration jurisdiction for tribal members living on tribal land is the tribe itself, not the State within which the tribe is located. *See* 42 U.S.C. § 16927(a)(1). Because the relevant jurisdiction had no registration system in place, Defendant asserts, registration was impossible and he cannot be prosecuted for failing to update his registration. *See* 18 U.S.C. § 2250(b)(1).

The Court does not read SORNA so narrowly. SORNA requires Defendant to register "in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). SORNA further provides that an offender who changes his address shall "appear in person in at least 1 jurisdiction involved pursuant to subsection (a)." 42 U.S.C. § 16913(c). Because Defendant does not currently work or study, he argues that "each jurisdiction" should be read to mean only the specific jurisdiction where he resides – the Navajo reservation. The Court concludes, however, that "each jurisdiction where the offender resides" should be read more broadly to include both the Navajo Nation and Arizona. The Court reaches this conclusion because Congress clearly intended SORNA to reach all sex offenders in all parts of the United States and to prevent even the temporary loss of offenders from the registration rolls.

In explaining the purpose of SORNA, Congress declared its intent to create "a comprehensive national system for the registration of [sex] offenders." 42 U.S.C. § 16901. The system was designed "to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators against the victims." *Id.* By "comprehensive," Congress meant a system that would cover every offender in every part of the United States. The existing patchwork of sex offender laws allowed some offenders to evade registration, a matter of grave concern to Congress. *See* 152 Cong. Rec. S8012-31 (2006); 152 Cong. Rec. H5722-30 (2006). In a House Judiciary Committee Report on a precursor to SORNA, the committee noted the need to create a system that encompasses every sex offender and avoids losing track of offenders when they move. *See* H.R. Rep. No. 109-218, pt. 1, at 23, 26 (2005). In the House floor debate on SORNA, Representative Van Hollen noted that the registration requirement was "replacing a patchwork of individual systems administered and maintained by each State" so that sex offenders cannot "slip through the cracks." 152 Cong. Rec. H5730 (2006) (statement of Rep. Van Hollen). Representative Sensenbrenner noted that "[t]here are over a half million sex offenders in the United States and up to 100,000 offenders are unregistered and their locations [are] unknown to the public and law enforcement." 152 Cong. Rec. H5722 (2006). In the Senate discussion

1 of the legislation, Senator Biden noted that "there are over 550,000 offenders nationwide, and
2 more than 20 percent of them are unaccounted for. . . . [T]his means there are as many as
3 150,000 of these dangerous sex offenders out there, individuals who have already committed
4 crimes and may, unless we do something, continue to jeopardize the most vulnerable among
5 us." 152 Cong. Rec. S8014 (2006). After examining SORNA's legislative history, the Ninth
6 Circuit observed that "[t]he language of the statute similarly evidences Congress's intent to
7 require *all* those who commit sex crimes against children to register as sex offenders."
8 *United States v. Mi Kyung Byun*, 539 F.3d 982, 993 (9th Cir. 2008) (emphasis added). The
9 Attorney General also concluded that "SORNA applies to *all sex offenders*[.]" 72 Fed. Reg.
10 30210, 30228 (May 30, 2007) (emphasis added).

11 Thus, when SORNA requires Defendant to register "in each jurisdiction" where he
12 resides, works, or studies, the Court concludes that this language can and should be read to
13 include not only the Navajo reservation, but also the State of Arizona within which
14 Defendant's home on the reservation is located. Similarly, when the statute provides that an
15 offender who changes his address shall within three business days "appear in person in at
16 least 1 jurisdiction involved pursuant to subsection (a)," 42 U.S.C. § 16913(c), the Court
17 concludes that Arizona is one of those jurisdictions. When Defendant could not report his
18 change of address to a registry on the reservation, this section obligated him to report it in
19 the other jurisdiction where he lived – Arizona. To read the statute more narrowly would
20 mean that offenders residing on or moving to reservations that had opted into SORNA but
21 had not yet created a registration system would have no obligation to register. They would
22 "slip through the cracks," precisely what Congress intended to avoid when it enacted
23 SORNA.[1]

---

25 [1]Defendant argues that commentary in the Federal Register shows that he is not
required to comply with SORNA until the Navajo Nation implements a registration system.
26 Defendant cites a specific example of a sex offender convicted in tribal court in 2005 who
27 "may have not been registered near the time of sentencing or release because the tribe had
not yet established any sex offender registration program at the time." 73 Fed. Reg. 38063.
28 This citation does not support Defendant's position. The discussion in this part of the

- 6 -

The Court concludes that Defendant could have and should have discharged his independent obligation under SORNA to report his change of address to Arizona when he left the Tucson treatment center and returned to the reservation. He certainly understood his obligation to register with Arizona – he had registered with the State in December of 2007. He understood that his plea agreement and this Court's order required him to register with all state and federal sex offender agencies. *See United States v. Begay*, CR-05-1039-PCT-DGC, Dkt. ## 35, 36. The Court cannot accept Defendant's argument that it was impossible for him to do so.

### B.     Lack of Attorney General specification.

Defendant argues that SORNA does not apply to him because the Attorney General has not yet specified the applicability of SORNA to persons required to register before SORNA is implemented in their jurisdiction. To the contrary, the Attorney General guidelines state that "[t]he applicability of the SORNA requirements is not limited to sex offenders whose predicate sex offense convictions occur following a jurisdiction's implementation of a conforming registration program. Rather, SORNA's requirements took effect when SORNA was enacted on July 27, 2006, and they have applied since that time to *all sex offenders*, including those whose convictions predate SORNA's enactment." 73 Fed. Reg. 38030, 38046 (July 2, 2008) (emphasis added).

---

Federal Register concerns two SORNA requirements: (1) that sex offenders be registered with a jurisdiction "before completing a sentence of imprisonment," 42 U.S.C. § 16913(b), and (2) that the jurisdiction take specific actions "shortly before release of the sex offender from custody," 42 U.S.C. § 16917(a). States and other jurisdictions cannot comply with these requirements for offenders released from custody before SORNA became effective. The Federal Register therefore specifies steps the jurisdictions must take to get these persons into the registration system, including registering them "as quickly as possible." 73 Fed. Reg. 38063. This discussion does not suggest that offenders in Defendant's position are relieved of their registration obligation until the tribe has a registration system in place. To the contrary, it discusses how jurisdictions can act quickly to bring these unregistered individuals into the system, and again emphasizes that "SORNA applies to *all* sex offenders." *Id.* (emphasis added).

### C. The Wetterling Act.

Defendant argues that SORNA does not apply because its predecessor, the Wetterling Act, remains in effect. Defendant asserts that since SORNA specifies that the Wetterling Act will be repealed on the deadline for implementation of SORNA, July 26, 2009, and SORNA has not yet been implemented in Arizona, SORNA does not yet apply in Arizona. The Court does not agree. As noted above, SORNA applies to all sex offenders, whether or not the jurisdiction in which they are located has implemented SORNA. *See* 73 Fed. Reg. 38030, 38046 (July 2, 2008). The Court does not find SORNA and the Wetterling Act to be mutually exclusive. Defendant is required to register with Arizona under the Wetterling Act and its misdemeanor penalties, *see* 42 U.S.C. § 14072, and under SORNA with its felony penalties, *see* 18 U.S.C. § 2250.

### D. Compliance with SORNA.

Defendant argues that since the registration procedures dictated by SORNA differ from Arizona's current Wetterling Act registration procedures, it was impossible for him to comply with SORNA even in Arizona. The Court does not agree. The main difference between the two schemes is that the current regulations require the Defendant to report to the sheriff of the jurisdiction he is leaving, in writing, within 72 hours, A.R.S. § 13-3822, while under SORNA Defendant must appear in person in the new jurisdiction to update the registry, 42 U.S.C. § 16913(c). The other differences noted by Defendant (such as electronic forwarding) are requirements imposed on the jurisdiction, not the individual, and do not impact whether or not Defendant is in violation of SORNA. *See United States v. Shenandoah*, 572 F. Supp. 2d 566, 578 (M.D. Penn. 2008).

Although the registration program under SORNA and Arizona's current program are not identical, Defendant is "not being prosecuted for providing less information than SORNA requires," but for "outright failure to register." *Id*. at 579. Defendant made no attempt to comply with Arizona's current registration program after his change of address. Because Defendant could have reported his change in address to the current registry and within the time limits established by SORNA, it cannot be said that his compliance was impossible.

- 8 -

### E. Due process violation.

Defendant contends that punishing him when compliance is impossible would violate due process. As discussed above, it was not impossible for Defendant to comply.

### F. Uncontrollable circumstances.

Defendant argues that it is uncontrollable that he is an Indian enrolled in the Navajo Nation, that the Navajo Nation has decided to become SORNA compliant, and that the Navajo Nation has not yet implemented SORNA or any other sex offender registry. Based on this, Defendant asserts that SORNA's affirmative defense of uncontrollable circumstances applies. *See* 18 U.S.C. § 2250(b)(1). As discussed above, Defendant could have complied with SORNA by reporting his change of address to Arizona.

### G. Non-delegation doctrine.

Defendant argues that Congress violated the non-delegation doctrine by allowing the Attorney General to specify whether SORNA would apply retroactively. "To withstand constitutional scrutiny, a Congressional delegation of authority must delineate 'an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform.'" *Shenandoah*, 572 F. Supp. 2d at 587 (quoting *United States v. Touby*, 909 F.2d 759, 764 (3d Cir. 1990)). Courts considering this issue have found a sufficient intelligible principle in SORNA to justify the delegation: "Congress established a clear policy of protecting the public from sex offenders . . . and established boundaries of the delegation by limiting the applicability of the Attorney General's rules to those convicted before the enactment of SORNA[.]" *United States v. Navidad-Garcia*, 560 F.Supp.2d 561, 567-68 (W.D. Tex. 2008). Indeed, "[e]very court that has confronted the issue has held that this delegation of authority is not so broad as to contravene the nondelegation doctrine." *Shenandoah*, 572 F. Supp. 2d at 587 (collecting cases).

### H. Administrative Procedures Act.

Defendant argues that the Attorney General's SORNA regulations violate the Administrative Procedures Act (APA) because the regulations were promulgated without notice and comment. Although the APA typically requires an agency to publish a proposed

1 rule in the Federal Register and provide an opportunity for comment, there is an exception
2 for good cause where it is "impractical, unnecessary, or contrary to the public interest." 5
3 U.S.C. § 553(b)-(c). The Attorney General justified immediate implementation of the
4 SORNA regulations because of the pressing need for legal certainty about SORNA's
5 retroactive application to pre-SORNA convicted offenders and the public safety imperative
6 that these offenders be registered as soon as possible. 72 Fed. Reg. 8894, 8896-97 (Feb. 28,
7 2007). Federal courts correctly have found this justification to be a sufficient demonstration
8 of good cause. *See Gould*, 526 F. Supp. 2d at 546; *United States v. Senogles*, 570 F. Supp.
9 2d 1134, 1152 (D. Minn. 2008) (noting that every court that has considered the issue has
10 found that the Attorney General demonstrated the good cause necessary to waive the notice
11 and comment period).

### I. Tenth Amendment.

13 Defendant argues that SORNA violates the Tenth Amendment because it forces states
14 to register offenders before the state has voluntarily implemented SORNA. The Tenth
15 Amendment prevents the federal government from issuing "directives requiring the states to
16 address particular problems" or commandeering state officials "to administer or enforce a
17 federal regulatory program." *Printz v. United States*, 521 U.S. 898, 935 (1997). Other courts
18 to consider this issue have concluded, correctly, that (1) an individual defendant lacks
19 standing to bring a Tenth Amendment challenge, (2) a Tenth Amendment challenge fails
20 because Congress enacted SORNA pursuant to its enumerated powers (Commerce Clause
21 and spending power), and (3) the state component of SORNA is voluntary. *Shenandoah*, 572
22 F. Supp. 2d at 584-585; *see also Crum*, 2008 WL 4542408, at *6; *United States v. Robinson*,
23 No. CR 108-021, 2008 WL 4086474, at *9 (S.D. Georgia 2008) (noting that every federal
24 decision found on this issue has rejected Defendant's Tenth Amendment argument).

### J. Ex post facto clause.

26 Finally, Defendant argues that the ex post facto clause is violated because the
27 indictment seeks to punish him for violating a law that does not yet apply. As discussed
28 above, however, SORNA applies to Defendant as an individual federal requirement. The ex

post facto clause "forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (quotation omitted). The indictment alleges that Defendant knowingly failed to register between July 13 and July 31, 2008, well after SORNA created the new crime on July 27, 2006, and well after the Attorney General made clear, on February 28, 2007, that SORNA applies to all sex offenders. Dkt. #1 at 1. The indictment thus seeks to punish Defendant for conduct that was illegal when committed. Such punishment does not violate the ex post facto clause. *Shenandoah*, 572 F. Supp. 2d at 573-74.

**IT IS ORDERED** that Defendant's Motion to Dismiss (Dkt. #11) is **denied**.

DATED this 23rd day of February, 2009.

*/s/ Daniel G. Campbell*
———————————————
David G. Campbell
United States District Judge